UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY VITALI VAN GRONINGEN, o/b/o M.A.V., <br><br>Plaintiff, <br><br>v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>Defendant. | Case No. 1:21-cv-01377-CDB (SS) <br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER <br><br>(Docs. 21, 25) |

Shelly Vitali Van Groningen on behalf of her minor son M.A.V. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Title XVI Supplemental Security Income ("SSI") benefits. The matter is before the Court on the certified administrative record ("AR"). (Doc. 14). Plaintiff filed a motion for summary judgment on July 1, 2022 (Doc. 21), and the Commissioner filed a responsive brief on September 14, 2022. (Doc. 25).[1] For the reasons set forth below, the Court denies Plaintiff's motion and affirms the Commissioner.

**I.      Background[2]**

On January 15, 2020, Plaintiff protectively filed an application for SSI, filed on behalf of M.A.V., an individual under age 18, with an alleged disability onset date of January 8, 2020. (AR 16). Plaintiff's claim was denied initially on April 16, 2020, and upon reconsideration on July 3,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 13).

[2] The procedural background is recounted to the extent that it is relevant to Plaintiff's arguments before the Court.

1  2020. (AR 68). Thereafter, Plaintiff submitted a written request for a hearing before an

2  Administrative Law Judge ("ALJ"), which was held on February 10, 2021, via telephone. (AR

3  44). Plaintiff appeared and testified on M.A.V.'s behalf. Plaintiff was represented by counsel.

4  After the hearing, the ALJ left the record open so that Plaintiff could submit additional evidence.

5  *See* (AR 518-97). Thereafter, on March 23, 2021, the ALJ closed the record and issued an

6  adverse decision. (AR 23).

7        The ALJ engaged in a three-step sequential evaluation process applicable where a

8  claimant under age 18 is alleged disabled. (AR 16) (citing 20 C.F.R. § 416.924(a)). The ALJ

9  noted that M.A.V. was born on April 29, 2015, was a preschooler as of the date that the

10 application for SSI was filed, and at the time the ALJ rendered his decision. (AR 17). At step

11 one, the ALJ found that M.A.V. was not engaging in substantial activity on or after the

12 application date. *Id.*

13       At step two, the ALJ found that M.A.V.'s attention-deficit hyperactivity disorder

14 ("ADHD") and oppositional defiant disorder ("ODD") were severe impairments under 20 C.F.R.

15 § 416.924(c). *Id*. However, the ALJ found that M.A.V. did not meet the criteria to be diagnosed

16 with autism spectrum disorder or bipolar disorder and that such conditions constituted non-

17 medically determinable impairments. *Id.* (citing 586-88, 595).

18       At step three, the ALJ found that M.A.V. did not have an impairment or combination of

19 impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ

20 considered the listing of impairments and found that the medical evidence did not establish that

21 M.A.V.'s impairments, either individually or in combination, met or equaled the severity criteria

22 of a listed impairment. Specifically, the ALJ analyzed the six domains of functioning under 20

23 C.F.R. § 416.929 and Social Security Ruling ("SSR") 09-2p. The ALJ found that M.A.V. has no

24 limitation in acquiring and using information; less than a marked limitation in attending and

25 completing tasks; less than a marked limitation in interacting and relating with others; no

26 limitation in moving about and manipulating objects; less than a marked limitation in the ability

27 to care for himself; and no limitation in health and physical well-being. (AR 19)

28       Turning to the domains at issue in this appeal, the ALJ found that M.A.V. has less than

marked limitations in attending and completing tasks. He noted that M.A.V. had been receiving treatment for ADHD, which includes medications and therapy. (AR 20) (citing AR 235-39). The ALJ also noted M.A.V.'s psychiatric evaluation in February 2020, during which his mother reported that he had hyperactivity and inattention. M.A.V.'s evaluator noted that he was in "constant motion" during the evaluation and diagnosed him with ADHD. *Id*. (citing AR 244-45). The evaluator further found that although M.A.V. displayed a short attention span during his social services appointments, he was also able to repeat concepts that were discussed in those session. (AR 550). The ALJ also noted that M.A.V.'s behavior improved with medication changes in February 2020 and that his mother reported that he was better able to re-direct onto tasks in October 2020. (AR 20) (citing AR 327; 544).

The ALJ further noted that M.A.V. had an educational evaluation as part of an assessment for an individualized education program ("IEP"). *Id*. (citing 63, 570, 584). The school psychologist, Emily Cline, observed that M.A.V. displayed age-appropriate attention during play-based tasks and was able to sit for more than 20 minutes without reminders to do so. M.A.V.'s IEP shows that his academics could be affected by his hyperactivity, but he would remain in a regular classroom 100% of the school day. *Id*. In addition, the ALJ relied on the opinions of Disability Determination Services consultants G. Dale, M.D., Nadine Genece, Psy.D, and H. Amado, M.D., who all believed that M.A.V had less than marked limitation in this domain. (AR 20).

The ALJ also found that M.A.V. has less than marked limitation in his ability to interact and relate with others. *Id*. The ALJ found that although Plaintiff reported M.A.V.'s defiant and aggressive behavior toward teachers and students in school, Plaintiff also reported that M.A.V.'s behavior had a "95% improvement" with medications and, later, that M.A.V. was no longer verbalizing harm towards anyone. (AR 327, 355). Plaintiff also reported that M.A.V. was "tantrum free" during a trip to a beach house. (AR 544). The ALJ found that M.A.V. made his greatest progress in treatment with his ability to respect others' boundaries and that he also made "noticeable" progress with other target behaviors. (AR 527). The ALJ relied on the findings of Drs. Dale, Genece, and Amado, who all believed that M.A.V. had less than marked limitations in

3

that area. (AR 21) (citing AR 45-53; 55-56).

In addition, the ALJ found that M.A.V. has less than marked limitation in his ability to take care of himself. M.A.V.'s educational evaluation noted that he tested in the "extremely low" range of adaptive behavior and that his conditions affected his activities of daily living. (AR 592). However, the ALJ found that during M.A.V.'s psychiatric evaluation in February 2020, his mother reported that M.A.V. could express his needs, feed himself, use the restroom independently, and get dressed with help. (AR 198-207). The ALJ further noted that M.A.V.'s psychiatric records noted improvement in his behavior with medication and, as noted above, that he was "tantrum free" during a vacation to the beach. (AR 327; 355; 521, 530, 544). In sum, the ALJ noted that M.A.V. had a history of problems of aggression, violence, and morbid thoughts. However, he also found that M.A.V.'s symptoms improved with medication. The ALJ found that Plaintiff generally had been able to take care of his personal needs and keep himself occupied during evaluations. (AR 21) (citing AR 265, 584).

Turning to the degree of limitation in M.A.V's functioning, the ALJ found that Dr. Amado's opinion was persuasive. Dr. Amado opined that M.A.V. had less than marked limitation in his ability to attend or complete tasks, interact, and relate with others and caring for himself. (AR 22). The ALJ found Dr. Amado's opinion to be supported by the narrative review of the record, which included a subjective report drafted by Plaintiff and a review of M.A.V.'s psychiatric records. (AR 55-56). The ALJ also deemed Dr. Amado's opinion to be consistent with the treatment record for Plaintiff's ODD and ADHD, M.A.V.'s inattentive behavior, and recommendations in M.A.V.'s IEP.

The ALJ also found the opinions of Dr. Dale and Dr. Genece to be persuasive to the extent that they were consistent with Dr. Amado's opinion. However, Drs. Dale and Genece found that M.A.V. had no limitation in his ability to care for himself, which the ALJ found inconsistent with M.A.V.'s treatment records, noting his difficulty with controlling his emotions, public tantrums, aggressive behavior, and other symptoms of ODD. (AR 462; 562-97). The ALJ noted that although Drs. Dale and Genece's opinions were supported by their review of the record, they did not have the opportunity to review numerous other records submitted after their review. (AR 22)

4

(citing 319-597). Nevertheless, the ALJ found the remainder of their opinions generally consistent with the record, especially as it pertains to M.A.V.'s ODD and ADHD treatment, his inattentive behavior, and the recommendations found in his IEP. (AR 562-97).

The ALJ found the opinion of M.A.V.'s treating primary care provider (Dr. Nirpaul Bains) to be unpersuasive. (AR 22). Dr. Bains found that M.A.V. was only able to stand or walk for two hours in a day and could sit for less than two hours in a day. Dr. Bains further opined that M.A.V. was unable to focus or follow simple directions. (AR 447-51). The ALJ found Dr. Bain's opinion to be unsupported by his treatment record, which contains several reports of improvement in symptoms with medication. (AR 327, 355, 462, 544). The ALJ also found the opinion inconsistent with the lack of any physical impairment of record, as sell as M.A.V.'s IEP, which noted he did not have an intellectual disability or an inability to follow instructions. (AR 22) (citing AR 562-97). *See* (AR 596).

The ALJ further explained that he "did not provide articulation about the opinions that are inherently neither valuable nor persuasive to the issue of whether the claimant is disabled in accordance with 20 C.F.R. § 416.920b." (AR 23) (citing AR 198-207).

Ultimately, the ALJ found that Plaintiff did not have an impairment or combination of impairments that functionally equaled a listing because Plaintiff lacked either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## II.     **The Disability Standard**

An individual under the age of 18 will be deemed disabled if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. The Social Security regulations provide a three-step process for determining whether a child is disabled. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two, which requires the ALJ to determine

whether the child's impairment or combination of impairments is severe. *Id*. The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). However, if there is a finding of severe impairment, the analysis proceeds to the third and final step, which requires the ALJ to determine whether the impairment or combination of impairments "meet[s], medically equal[s], or functionally equal[s]" the severity of a set of criteria for an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(d).

If an impairment does not meet the requirements of, or is not medically equal to, a listed impairment, the claimant may still be disabled if his impairment or combination of impairments is found to be "functionally equivalent" to a listed impairment. In child disability cases, a "whole child approach" is used to determine functional equivalence. *R.S. by & Through Herrera v. Berryhill*, 357 F. Supp. 3d 1033, 1037 (C.D. Cal. 2019). That is, the ALJ considers all of the child's activities, "everything [the child does] at home, at school, and in [the] community." 20 C.F.R. § 416.926a(b). Functional equivalence is measured by assessing the claimant's ability to function in the following six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). Limitations in functioning must result from the child's medically determinable impairments. *See* 20 C.F.R. § 416.924a (describing considerations for determining disability for children). An impairment or combination of impairments is functionally equivalent to a listing if it results in "marked" limitations in two areas, or an "extreme" limitation in one area of functioning. 20 C.F.R. § 416.926a(a). Specifically:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). Minor claimants of any age will be found to "have a 'marked' limitation when [they] have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii). Standardized testing provides important information about deficits in development and functioning in terms of standard deviations and percentiles. 20 C.F.R. §§ 416.926a(e)(1)(ii), (e)(2)(iii). However, test scores alone do not establish marked or extreme limitations in a domain. 20 C.F.R. §§ 416.924a(a)(1)(ii), 416.926a(e)(4). No single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain. 20 C.F.R. § 416.926a(e)(4)(i).

The Commissioner is to consider test scores together with reports and observations of school personnel and others. 20 C.F.R. §§ 416.924a(a), (e)(4)(ii). In assessing functional equivalence, the ALJ also considers how much extra help the child needs, how independent he is, how he functions in school, and the effects of medication or other treatment. 20 C.F.R. § 416.926a(a). In evaluating this type of information, the ALJ considers how the child performs activities as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

In making a determination of disability, "the ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting 20 C.F.R. § 416.923). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

**III.   Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**IV.     Discussion**

Plaintiff brings three issues for the Court's review. She asserts that there is not substantial evidence to support the ALJ's findings that M.A.V. has less than a marked limitation in (1) attending and completing tasks; (2) interacting and relating with others; and (3) care for himself.

/ / /

### 1. Attending to and Completing Tasks

In the domain of attending and completing tasks, the agency "considers how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h); *see* SSR 09-2p, 2009 WL 396032, at *1 (Feb. 18, 2009) (identifying "attending and completing tasks" as one of six domains to be considered). Plaintiff was a preschooler (four years old) on January 15, 2020, the date that the application was filed (AR 17), and he continued to be a preschooler at the time the ALJ rendered his decision. *Id*. The regulations provide the following for the preschooler age child group:

> (iii) Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and change your activity when a caregiver or teacher says it is time to do something else.

42 C.F.R. § 416.926a(h)(2)(iii). Plaintiff asserts that the ALJ's finding that he has less than a marked limitation in attending and completing tasks is not supported by substantial evidence. Plaintiff argues the ALJ's explanation that M.A.V. is receiving treatment for ADHD and has an IEP at school to address his deficits does not provide any specific evidence on how Plaintiff functions in his actual activities. (Doc. 21 p. 10). Specifically, Plaintiff argues that the ALJ's mere reference to the fact that a claimant is receiving treatment is not probative of his actual limitations. *Id.* (citing SSR 09-2P, 2009 WL 396032, at *1) ("Activities are everything a child does at home, school and in the community, 24 hours a day, 7 days a week.").

It was not erroneous for the ALJ to acknowledge Plaintiff's engagement in therapy and participation in an IEP. Further, it is clear from the ALJ's written opinion that he did not ascribe any particular finding about Plaintiff's ability to attend and complete tasks to Plaintiff's mere engagement in therapy and participation in an IEP. Rather, the ALJ's reference to therapy and an IEP is coupled with his citation to observations by therapists and school psychologists about Plaintiff's behavior in those settings. (AR 20). In other words, the ALJ's reference to therapy

9

1    and the IEP was relevant for context and narrative.

2    Plaintiff further argues that the State Agency opinions assessing that M.A.V. has a less
3    than marked limitation is insufficient to support the ALJ's related findings. Plaintiff argues that
4    the medical consultants only provided a brief explanation based on an incomplete record and had
5    no contact with Plaintiff. (AR 49, 62). However, in his ruling, the ALJ provides an
6    individualized assessment of the State Agency opinions and acknowledges that some State
7    Agency consultants were less persuasive than others. For example, the ALJ found Dr. Amado's
8    opinion was persuasive and included a narrative review of M.A.V.'s psychiatric records. (AR 22).
9    Dr. Amado's report included information supplied by Plaintiff that he had several changes in his
10   medication and had experienced worsening symptoms. (AR 56). Dr. Amado's report also
11   considered evidence from various other sources, including treatment providers at United Health
12   Center, Turning Point, the Selma Unified School District, and Children's
13   Hospital/Madera/Valley. (AR 58-59).

14   On the other hand, the ALJ found the opinions of Drs. Dale and Genece less persuasive
15   than Dr. Amado since he had greater access to M.A.V.'s medical records. (AR 22). The ALJ
16   accounted for the lesser access to records and found that Plaintiff had less than marked limitation
17   to take care of himself, instead of adopting the less favorable findings of Drs. Dale and Genece
18   that Plaintiff had no limitation. Finally, even if the State Agency consultants did not have contact
19   with M.A.V., the ALJ cited to Plaintiff's psychiatric evaluations that were conducted between
20   June and October 2020, during which the attending providers did interact with Plaintiff. (AR 327-
21   28, 544).

22   Plaintiff also argues that the ALJ's reasoning for finding a less than marked limitation
23   based in part on reports that Plaintiff's symptoms improved with medication and that his mother
24   reported improvement in re-direction is also deficient. (Doc. 21 at 10). She argues that although
25   Plaintiff did experience improvement at times because of medication and treatment, the medical
26   record also showed that M.A.V. worsened or regressed after medication changes. *See* (AR 326-
27   27). However, the ALJ's written decision reflects that he took this into account. First, Dr.
28   Amado's report, on which the ALJ relies to support his conclusions, reflects that Dr. Amado had

1   the opportunity to review much of Plaintiff's medical records and was also informed of Plaintiff's
2   various medication changes. (AR 56). In his report, Dr. Amado comments on those medication
3   changes:

> It is not unusual to see that the identified primary ADHD impairment requires a number of medication adjustments (not just the dose but also trying different agents and combinations) before an optimal regimen is attained for the particular child. This seems to be the case here. Unfortunately[,] the alarming mood and behavioral changes observed earlier last month appear to have ben [*sic*] linked to medication changes, which now have been ameliorated as per latest notes, indicating an improvement trajectory is hopefully underway.

(AR 61).

Dr. Amado's report is corroborated by a plan-of-care note dated October 6, 2020, stating that Plaintiff is making modest gains, as his outbursts have lessened in frequency, and he had no tantrums at a beach house outing. (AR 544).

Lastly, Plaintiff argues that the ALJ's reliance on a school psychologist's report (AR 584) was misplaced as the psychologist only observed Plaintiff on two occasions and that, as such, the ALJ's related findings are based on an "inaccurate representation of the evidence." (AR 21 p. 11). The ALJ, Plaintiff contends, improperly drew inferences about Plaintiff's day-to-day functioning from evidence in new or unusual situations instead of relying on a longitudinal record, which he argues showed that Plaintiff was uncooperative, hostile, in constant motion, and oppositional. (AR 242, 253, 264, 299); 20 C.F.R. § 416.924a(b)(6); SSR 09-02P, 2009 WL 396032, at *12 n. 24 (cautioning that "Accepting the observation of the child's performance in an unusual setting . . . without considering the rest of the evidence could lead to an erroneous conclusion about the child's overall functioning."). However, the ALJ did not singularly rely on the school psychologist reports or on Plaintiff's reported behavior in specific, "unusual" settings, but instead, acknowledged various social service appointments (many of which postdate Plaintiff's cited reports), as well as Plaintiff's own reports of improvement, including improvement in M.A.V.'s ability to redirect and cope with frustration, which suggested an upward trajectory in M.A.V.'s conditions. *See* (AR 20) (citing 327, 544).

The "substantial evidence" standard is deferential and "[w]here the evidence is susceptible

to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Here, the ALJ's conclusion regarding M.A.V.'s ability to attend and complete tasks is supported by the record as a whole and by overlapping categories of evidence cited and relied upon by the ALJ.

**2. Interacting and Relating with Others**

In this domain, the Commissioner considers how well claimants initiate and sustain emotional connections with others, develop and use language of their community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of other people. 20 C.F.R. §416.924a(i). For preschool children, the regulations provide that:

> (iii) Preschool children (age 3 to attainment of age 6). At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

20 C.F.R. § 416.926a(i)(2)(iii). Plaintiff reasserts the same arguments that the ALJ's reliance on M.A.V.'s ODD treatment is not specific enough to determine his functionality at home, school, and his community; that the ALJ failed to account for the longitudinal and variable evidence in this case in regard to Plaintiff's improvements; and that the state agency consultants' assessment of "less than marked" limitations was insufficient.

In addition, Plaintiff asserts that the ALJ's reliance on variable evaluations is not supported by substantial evidence. Plaintiff points to a progress note setting forth that although M.A.V. experienced progress in respecting others' boundaries and their bodily autonomy, the same note documented that Plaintiff experienced one or two violent outbursts per week and four or five oppositional/ defiant behaviors per week. (AR 527). Plaintiff argues that the ALJ did not consider variations in his functioning over time when making his determination.

The Court finds that most of Plaintiff's arguments are conclusory and underdeveloped.

1  For the same reasons set forth above in addressing Plaintiff's arguments concerning the
2  attending/completing tasks domain, the Court finds that the ALJ adequately supported his
3  findings. Thus, the ALJ properly relied on Dr. Amado's report and cited to Plaintiff's evaluation
4  sessions by the school psychologist, as well as M.A.V.'s medical records, which showed a
5  longitudinal improvement in M.A.V.'s condition. (AR 582-83, 327, 355, 544). The ALJ also
6  cited to a progress note from January 4, 2021, which stated that M.A.V. made noticeable progress
7  in his target behaviors, including great progress respecting others' boundaries and their bodily
8  autonomy. (AR 20 citing AR 527). Under the "extremely deferential" standard of substantial
9  evidence, that was enough. *Thomas*, 993 F.3d at 1208.

### 3. Ability to Care for Himself

In this domain, the Commissioner assesses how well a claimant maintains a healthy and emotional physical state, including how well the claimant gets physical and emotional wants and needs met appropriately; how well the claimant copes with stress and changes in environment; and whether the claimant takes care of health, possessions, and environment. 20 C.F.R. § 416.926a(k). For preschool children, the regulations provide that:

> (iii) Preschool children (age 3 to attainment of age 6). You should want to take care of many of your physical needs by yourself (e.g., putting on your shoes, getting a snack), and also want to try doing some things that you cannot do fully (e.g., tying your shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for you to agree to do what your caregiver asks. Later, that may be difficult for you because you want to do things your way or not at all. These changes usually mean that you are more confident about your ideas and what you are able to do. You should also begin to understand how to control behaviors that are not good for you (e.g., crossing the street without an adult).

20 C.F.R. § 416.926a(k)(2)(iii). Plaintiff echoes previously asserted arguments regarding the ALJ's findings that M.A.V. experienced improved symptoms with medications. In addition, Plaintiff argues that the ALJ erred by relying on Plaintiff's report that M.A.V. can express his needs, as that report also showed that M.A.V. exhibited violent, aggressive, and oppositional behaviors at home. (AR 251-52).

Lastly, Plaintiff argues that the ALJ "cherry picked" from the record without basing his conclusions on the context of the whole record. (Doc. 21 at 12) (citing *Ghanim v. Colvin*, 763

1  F.3d 1154, 1164 (9th Cir. 2014)).  In support of this argument, Plaintiff points to various records,
2  including a mental health assessment conducted on January 13, 2020, which reports that M.A.V.
3  struggles with focusing on activities, following directives, or waiting in turn.  (AR 264-65).

4        The Court disagrees that the ALJ "cherry picked" the record, and, instead, finds the ALJ
5  even-handedly acknowledged aspects of the record both favorable and unfavorable to Plaintiff's
6  position.  The ALJ supported his finding by citing to portions of M.A.V.'s treatment record that
7  documented improvement in his behavior with medication as well as behavior improvements.
8  (AR 21) (citing 327, 521, 530, 544).  The ALJ's citations reflect a period from February 2020
9  (AR 327) to October 2020 (AR 544), and thus demonstrates that the ALJ considered M.A.V.'s
10 symptoms by looking at the record longitudinally.

11       The ALJ supported his findings by referencing portions of the record documenting that
12 M.A.V. was able to keep himself occupied during evaluations.  *See* (AR 20) (citing AR 265 "Cl
13 remained quiet and preoccupied by toys throughout session"); (AR 584) ("[h]e also readily
14 responded to examiner requests to put the toys away and clean up.")  The ALJ further relied on a
15 report dated February 19, 2020, that M.A.V. can dress himself with help, can control his bladder,
16 eats with utensils, bathes without help, and brushes his teeth with help.  (AR 206).

17       Plaintiff also points to assessment observations conducted by the school psychologist that
18 M.A.V. required reminders to sit at the table for assessment tasks.  (AR 584). However, this same
19 assessment states that M.A.V. displayed age-appropriate, sustained attention to play activities and
20 was able to sit for more than 20 minutes without any reminders. *Id*. These same exam findings
21 relied upon by Plaintiff provide that M.A.V. had "questionable motivation" to complete the
22 assessment and should be viewed cautiously.  (AR 585, 86, 96).  The ALJ appropriately took
23 those disclaimers into consideration.  *E.g.,* (AR 20) (citing AR 584-85).

24       At bottom, Plaintiff's advancement of an alternative interpretation of the evidence does
25 not establish error.  *Ford*, 950 F.3d at 1154.  Since the ALJ's interpretation of the evidence is
26 rational, it cannot be said that he committed error.  In sum, the ALJ properly evaluated and
27 considered a wide variety of sources of evidence to support his findings. The Court concludes that
28 the ALJ's findings are supported by substantial evidence and his decision should be affirmed.

**V.      Conclusion and Order**

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and proper analysis.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (Doc. 21) is **DENIED** and the decision of the Commissioner of Social Security is **AFFIRMED**.
2. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Shelly Vitali Van Groningen and to close this case.

IT IS SO ORDERED.

Dated:   **April 22, 2024**                                   _____
                                                                                   UNITED STATES MAGISTRATE JUDGE